**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SHERRI L. CARPENTER,**

      **Plaintiff,**

                                   **Civil Action 2:18-cv-1250**
                                   **Chief Judge Edmund A. Sargus, Jr.**
      **v.**                           **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Sherri L. Carpenter ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

application for a period of disability and disability insurance benefits.   This matter is before the

undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9),

the Commissioner's Response in Opposition (ECF No. 15), and the administrative record (ECF

No. 7).   For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of

Errors be **OVERRULED** (ECF No. 9) and that the Commissioner's decision be **AFFIRMED**.

## I.      BACKGROUND

Plaintiff protectively filed her application for a period of disability and disability

insurance benefits on October 15, 2015.   In her application, she alleged a disability onset of

September 30, 2015.   Plaintiff's application was denied initially on December 22, 2015, and

upon reconsideration on May 18, 2016.   Plaintiff sought a hearing before an administrative law

judge.   Administrative Law Judge Nikki Hall (the "ALJ") held a hearing on March 8, 2018, at

which Plaintiff, represented by counsel, appeared and testified.   Vocational expert Larry Ostrowski, Ph.D., (the "VE") also appeared and testified at the hearing.   On April 10, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.   Plaintiff requested that the Appeals Council review the ALJ's decision.   She submitted additional evidence to the Appeals Council, including records from Southeast Healthcare Services dated January 22, 2018, to April 19, 2018.   (R. at 2.)   The Appeals Council found the evidence did "not show a reasonable probability that it would change the outcome of the decision."   (*Id*.)   On August 20, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Specific Errors (ECF No. 9), Plaintiff contends that the ALJ erred in classifying her mental health impairment as non-severe.   (*Id*. at 5.)   Within this contention of error, Plaintiff asserts that the ALJ improperly relied on the opinions of the state-agency psychologists and consultative examiner and failed to consider mental health evidence that was submitted after they provided their opinions.   (*Id*.)   Plaintiff further contends that the ALJ erred in rejecting the opinion of Certified Nurse Practitioner ("CNP") Danielle Bartley and the Global Assessment of Functioning ("GAF") scores assessed by Southeast Healthcare Services. (*Id*. at 6-9.)   According to Plaintiff, the ALJ's errors ultimately led to an incorrect residual functional capacity ("RFC") assessment.

## II.     RELEVANT MEDICAL EVIDENCE[1]

**A.     Consultative Examiner, James N. Spindler, M.S.**

James N. Spindler, M.S., evaluated Plaintiff on December 15, 2015.   Mr. Spindler noted that Plaintiff spoke clearly and at a normal rate and "had no apparent difficulty staying focused during the evaluation."   (R. at 428.)   He further noted that Plaintiff "did not appear to be depressed," and that she was "pleasant, seemed relaxed and maintained eye contact as she spoke."   (*Id*.)   Plaintiff reported that medication makes her symptoms generally manageable and that she only occasionally feels depressed when medicated.   (*Id*. at 428, 429, 430.)   Mr. Spindler diagnosed Plaintiff with mild, unspecified depressive disorder.   (*Id*. at 430.)

Mr. Spindler also completed an assessment of Plaintiff's functional abilities.   He opined that Plaintiff appears to be functioning in the average range of intelligence and "seems capable of understanding, remembering and carrying out instructions in most job settings."   (*Id*. at 430.)   Regarding her ability to maintain concentration, persistence, and pace, Mr. Spindler found that Plaintiff "appears to have the mental ability to sustain a working pace and to maintain a level of attention and concentration that would be sufficient for most job settings."   (*Id*. at 431.)   He also opined that Plaintiff appears to have the ability to respond appropriately to supervision and to coworkers.   (*Id*.)   Finally, he opined that Plaintiff appears to be handling the current stressors in her life reasonably well and to have the ability to respond appropriately to routine work pressures.   (*Id*. at 431.)

---

1  In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged physical impairments.   Accordingly, the undersigned will focus its review of the medical evidence on Plaintiff's alleged non-exertional impairments.

**B.    State-Agency Reviewing Psychologists, Courtney Zeune, Psy. D., and Carl Tishler, Ph.D.**

On initial review, state-agency psychologist, Courtney Zeune, Psy.D., found that Plaintiff has a non-severe affective disorder.   (R. at 156.)   She found that Plaintiff has no restriction of activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.   (*Id.*)   Dr. Zeune concluded as follows:

> Recent exam and ADLs [activities of daily living] show psychological impairments stable with medications.   She did not report interference from mental health symptoms during past work.   Able to get along with coworkers and supervisors. Able to perform ADLs within her physical abilities.   Impairments are not severe.

(*Id.*)   In reaching her conclusion, Dr. Zeune found consultative examiner Mr. Spindler's opinions to be consistent and afforded them great weight.   (*Id*. at 157.)   On reconsideration, Carl Tishler, Ph.D., adopted Dr. Zeune's findings.   (*Id*. at 167-68.)

**C.    Certified Nurse Practitioner, Danielle Bartley, Southeast Inc.**

On January 24, 2018, CNP Danielle Bartley submitted a "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)."   (R. at 1069.)   She opined that Plaintiff is seriously limited[2] in her ability to do the following: understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention for a two-hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity

---

2 "Seriously limited" was defined as follows: "your patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week."   (R. at 1069.)

to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; deal with stress of semiskilled and skilled work; travel in unfamiliar places; and use public transportation.  (R. at 1069-70.)  CNP Bartley opined that Plaintiff has limited but satisfactory abilities to do the following: remember work-like procedures; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others.  (*Id.*)  She opined that Plaintiff is not limited in her ability to interact appropriately with the general public; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness.  (*Id.*)

CNP Bartley explained that conflict and stress aggravate Plaintiff's depression.  (R. at 1070.)  She also explained that Plaintiff has difficulty staying asleep and has diminished interest and pleasure.  (*Id.*)  She noted that "[j]ob related duties cause [Plaintiff] stress which increases anxiety and depression," and that Plaintiff "reports functioning as somewhat difficult[] on a daily basis."  (*Id.*)  CNP Bartley opined that Plaintiff would be absent from work more than four days per month.  (*Id.*)

## III.    THE ADMINISTRATIVE DECISION

On April 10, 2018, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act.  (R. at 20-31.)  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 30, 2015, the alleged onset date.  (*Id.* at 22.)  At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the cervical spine with radiculopathy, degenerative disc disease of the lumbar spine status-post remote laminectomy, degenerative joint disease in right acromioclavicular joint, and fibromyalgia."  (*Id.*)  The ALJ found Plaintiff's unspecified depressive disorder to be non-severe because it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities."  (*Id*. at 23.)  In reaching this conclusion, the ALJ considered the requisite criteria and concluded that Plaintiff has mild limitations in her ability to concentrate, persist, or maintain pace, and no

---

3.   Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.   *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

limitations in her ability to understand, remember, or apply information; to interact with others; or to adapt and/or manage herself.   (*Id*. at 24.)   The ALJ also considered the opinion evidence and assigned "significant" weight to the opinions of state-agency psychologists, Drs. Zeune and Tishler, and consultative examiner, Mr. Spindler, and "little" weight to the opinion of CNP Bartley.   (*Id.* at 24-25.)   She also assigned "little" weight to the GAF scores of 55 assessed by Southeast Healthcare Services.   (*Id.*)

At step three of the sequential process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (*Id.* at 26.)   The ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) EXCEPT: claimant can never climb ladders, ropes, and scaffolds and is limited to occasional other postural movements (i.e. climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling); work should not require exposure to unprotected heights; works should not require greater than frequent handling; work should not require continuous overhead reaching; work should not require continuous talking; and work should not require greater than 5 hours of standing and/or walking in an 8 hour workday.

(*Id*. at 27.)

At step four, the ALJ found that Plaintiff is able to perform past relevant work as a General Clerk.   (*Id*. at 29-30.)   She therefore concluded that Plaintiff was not disabled under the Social Security Act.   (*Id*. at 31.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    ANALYSIS

As set forth above, Plaintiff contends that the ALJ erred in finding her unspecified

depressive disorder to be non-severe and in omitting non-exertional limitations from her RFC. (Pl.'s Statement of Errors at 5, ECF No. 9.) She contends that the ALJ's decision is not supported by the mental health evidence in the record, including the opinion of CNP Bartley and the GAF scores assessed by Southeast Healthcare Services. (*Id.* at 6-8.) Plaintiff further contends that the ALJ's failure to find her depressive disorder severe at step two is not harmless error because the ALJ subsequently failed to include non-exertional limitations in the RFC. The Commissioner counters that the ALJ's step-two findings are supported by substantial evidence and that Plaintiff failed to meet her burden of showing that her alleged mental health impairments affect her more than minimally. (Def.'s Resp. in Opp'n at 4-5, ECF No. 15.) The undersigned agrees with the Commissioner and finds Plaintiff's contentions of error to be without merit.

## A.     The ALJ's Step Two Analysis

The undersigned finds no error in the ALJ's consideration of Plaintiff's mental impairments and that substantial evidence supports the ALJ's conclusion that Plaintiff's depressive disorder is non-severe.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out

claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)).

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months," 20 C.F.R. 404.1509. "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908). Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996). Significantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." *Id.* Symptoms consist of a claimant's description of his or her alleged impairment. 20 C.F.R. § 404.1528(a). In contrast, "signs" include "psychological abnormalities which can be observed." 20 C.F.R. § 404.1528(b). In addition, "[p]sychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception." 20 C.F.R. § 404.1528(b). "Laboratory findings" include "psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." *Id.* The Sixth Circuit has advised that "[w]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (internal quotation marks and

citations omitted).

"When there is evidence of a mental impairment documented by 'medically acceptable clinical and laboratory diagnostic techniques,' 20 C.F.R. § 404.1508, the regulations require the ALJ to follow a 'special technique' to assess the severity of the impairment, 20 C.F.R. § 404.1520a." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013). The ALJ will rate the degree of a claimant's functional limitation in four broad areas: the ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). For these areas, the ALJ will rate the plaintiff on a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the degree of the claimant's limitations is rated as "'none' or 'mild,'" the ALJ will generally conclude that the plaintiff's impairments are "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [claimant's] ability to do basic work activities. . ." 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ concluded that Plaintiff's unspecified depressive disorder was non-severe. (R. at 22-26.) In reaching her conclusion, the ALJ completed a thorough analysis of the four areas of mental functioning, or the "paragraph B" criteria, and found that Plaintiff had mild limitations in concentration, persistence, or in maintaining pace, and no limitations in understanding, remembering, or applying information; in interacting with others; or in adapting or managing herself. (R. at 24). The ALJ concluded that "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas, they are found to be nonsevere (20 CFR 401.1520a(d)(1))." (R. at 24.) The ALJ further found that Plaintiff's depression did not cause more than "minimal limitation in [her] ability to

perform basic mental work activities" and declined to include mental limitations in Plaintiff's RFC. (*See* R. at 23, 24, 26.) The undersigned finds no error in the ALJ's consideration of Plaintiff's unspecified depressive disorder at step two.

### 1. The ALJ's Consideration of the Opinions of the State-Agency Psychologists and Consultative Examiner

According to Plaintiff, the ALJ erred in assigning significant weight to the opinions of the state-agency psychologists and consultative examiner regarding the severity of her mental impairments because their opinions were "incomplete" and "outdated." (Pl.'s Statement of Errors at 10, ECF No. 9.) She further asserts that the ALJ failed to consider mental health evidence dated after those opinions. (*Id.*) The undersigned disagrees and finds that the ALJ appropriately considered and weighed the opinions of the state-agency psychologists and the consultative examiner, and did, in fact, consider the mental health evidence dated after their opinions.

In evaluating a claimant's case, the ALJ must consider all medical opinions that he or she receives. 20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the

specialization of the source. 20 C.F.R. § 416.927(c). However, the ALJ is not required to explicitly address all of the factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision). In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to a treating physician, she must explain the weight assigned to the opinions of the medical sources. *See* 20 C.F.R. § 416.927(c).

Here, the ALJ reasonably assigned "significant" weight to the state-agency psychologists' opinions that Plaintiff's mental impairment is non-severe. The ALJ thoroughly discussed their opinions and reasonably concluded that their findings were consistent with the medical records. *See* 20 C.F.R. § 404.1527(c) (identifying "consistency" with the record as a whole as a relevant consideration when evaluating a medical source opinion). More specifically, the ALJ found that their opinions "are consistent with the medical records in the case, which found claimant to [be] consistently properly oriented to time, place, and person, as well as having a normal mood and affect." (R. at 24 (citing R. at 380, 391, 395, 403, 412, 498, 507, 515, 744, 749, 752, 761, 765, 830, 834, 853, and *generally*, R. at 346-1111).) The ALJ also reasonably concluded that the state-agency psychologists' opinions were "consistent with claimant's treatment history, which has been mild and limited to prescription medication and sporadic individualized therapy, with no evidence of admittance to an inpatient facility due to mental health issues." (*Id.* (citing *generally*, R. at 346-1111).) The ALJ further considered Plaintiff's mental health treatment records from Southeast Inc., and found that Plaintiff was

typically observed having "normal orientation, thought process, and affect," (R. at 24 (citing R. at 711, 739, 789, 802, 808, 839, 872, 881, 885, 1008, 1014, 1017; *and generally* R. at 701-40, 787-819, 837-41, and 872-93)), as well as "'[a]verage' intelligence, normal insight, and normal judgment," (R. at 24 (citing (R. at 711, 802, 813, 882, 890, 1008, 1017)). Finally, the ALJ considered that the state-agency psychologists' opinions are consistent with the opinions of the consultative examiner, Mr. Spindler, who found Plaintiff's depressive disorder to be mild and noted that Plaintiff had normal appearance and thought associations, average intelligence, reliable judgment, and did not appear to be depressed. (R. at 24-25 (citing (R. at 428-31).) Thus, substantial evidence supports the ALJ's decision to assign "significant" weight to the state-agency psychologists' opinions.

The undersigned likewise finds that the ALJ reasonably assigned "significant" weight to the opinion of consultative examiner Mr. Spindler. The ALJ explained that Mr. Spindler personally examined Plaintiff and that his opinion is consistent with the totality of evidence. (R. at 25); *see also* 20 C.F.R. § 404.1527(c) (identifying the "examining relationship" and "consistency" with the record as a whole as relevant considerations when evaluating a medical source opinion). The ALJ found that Mr. Spindler's opinion "is supported by observations of the claimant in a routine medical setting, where she was observed as being alert, oriented, and having normal mood and affect with no concern provided for her mental well-being." (R. at 25 (citing *generally* R. at 346-1111).) The ALJ also found that Mr. Spindler's opinions are consistent with Plaintiff's treatment history, "which is limited solely to prescription medication and sporadic individualized therapy." (R. at 25.) Indeed, Plaintiff reported to Mr. Spindler that medication makes her symptoms generally manageable and that she only occasionally feels

depressed when medicated. (R. at 428, 429, 430.) Accordingly, the undersigned finds that substantial evidence supports the ALJ's decision to assign significant weight to Mr. Spindler's opinion.

Furthermore, in supplying evidence to support her assessment of the medical opinions of the state-agency psychologists and Mr. Spindler, the ALJ cited mental health records that were dated both before and *after* those opinions were rendered.[4] (*See, e.g.,* R. at 24-25 (citing R. at 802, 808, 839, 872, 881, 885, 1008, 1014, 1017 and *generally* R. at 346-1111).) The ALJ also considered CNP Bartley's opinion, which was submitted *after* the opinions of the state-agency psychologists and consultative examiner. (R. at 25.) Thus, Plaintiff's contentions that the opinions of the state-agency psychologists and consultative examiner are "outdated" and that the ALJ failed to consider more recent mental health evidence lack merit. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (rejecting Plaintiff's argument that the state-agency opinions were outdated and that the ALJ erred in relying on them where the ALJ considered medical examinations that occurred after their assessment and took into account relevant changes in Plaintiff's condition).

### 2. The ALJ's Consideration of the Opinion of CNP Bartley

The undersigned also finds no error in the ALJ's decision to discount the opinion of CNP Bartley. The ALJ thoroughly discussed CNP Bartley's opinion and explained the weight assigned to it as follows:

> Additionally, the opinion of Danielle Bartley, CNP from Southeast Inc. is afforded
> little weight. . . These opinions are markedly inconsistent with Southeast Inc.['s]

---

4 Mr. Spindler rendered his opinion on December 15, 2015; Dr. Zeune rendered her opinion on December 22, 2015 (R. at 156); and Dr. Tishler rendered his opinion on May 13, 2016 (R. at 168).

own treatment notes regarding the claimant, which consistently found her to have normal orientation, thought process, and affect. (Exhibit 9F/11, 39, 14F/3, 16, 22[,] 17F/3, 21F/1, 10, 14, 27F/8, 14, 17; *see generally* Exhibits 9F, 14F, 17F, and 21F). Further, Southeast Inc. identified the claimant as having average intelligence, normal insight, and normal judgment, which is inconsistent with an individual whose ability to understand and carry out instructions or deal with workplace stressors is "seriously limited." (Exhibit 9F/11, Exhibit 14F/16, 27, 21F/11, 19, 27F/8, 7). Finally[,] this opinion is also inconsistent with the Consultative Examination performed on the claimant, which found the claimant with normal appearance, normal thought associations, average intelligence, reliable judgment, and did not appear to be depressed. (Exhibit 4F/3-6). Therefore, as this opinion is unsupported by the medical evidence, it is afforded little weight.

(R. at 25.) Here, the ALJ articulated her reasons for affording little weight to CNP Bartley's opinion and concluded that it was inconsistent with and unsupported by Plaintiff's treatment records and the consultative report. (*Id.*); *see* 20 C.F.R. § 404.1527(c) (identifying "supportability" and "consistency" with the record as a whole as relevant considerations when evaluating a medical source opinion).

Substantial evidence supports the ALJ's decision to discount CNP Bartley's opinion. First, the ALJ reasonably concluded that CNP Bartley's opinions are inconsistent with Plaintiff's treatment records from Southeast Inc. (R. at 25.) The ALJ considered that Southeast's records routinely noted Plaintiff to have normal orientation, thought process, and affect, as well as average intelligence, normal insight, and normal judgment. (*Id.* (citing (R. at 711, 739, 789, 802, 808, 813, 839, 872, 881, 882, 885, 890, 1007, 1008, 1014, 1017; and *generally* R. at 701-740, 787-819, 837-41, 872-93).) Additionally, the ALJ reasonably considered that CNP Bartley's opinion was inconsistent with the consultative examination results, "which found the claimant with normal appearance, normal thought associations, average intelligence, reliable judgment, and [to] not appear to be depressed." (R. at 25 (citing R. at 428-31).)

According to Plaintiff, however, the ALJ cherry picked, ignored, or otherwise mischaracterized evidence in evaluating CNP Bartley's opinion. (Pl. Statement of Errors at 6, ECF No. 9.) For example, Plaintiff contends that the ALJ ignored mental health records from Southeast Inc., from as early as 2016, that note Plaintiff as having a depressed, irritable, and/or agitated mood; little interest or pleasure in doing things; difficulty concentrating; anxiety; and episodes of crying. (*Id.* at 7, ECF No. 9.) Nonetheless, it is well established that an ALJ is not required to "discuss every piece of evidence in the record to substantiate [her] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (citations omitted). Moreover, an allegation of "cherry picking" "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Here, although the ALJ did not specifically address every piece of evidence in the record, her factual findings reveal that she considered the record as a whole and did not "cherry pick" the medical evidence to support her step two analysis. Indeed, although Plaintiff points to several records noting abnormal findings such as depressed, irritable, and/or agitated mood; little interest or pleasure in doing things; difficulty concentrating; anxiety; and crying, (Pl. Statement

of Errors at 7, ECF No. 9 (citing R. at 124, 126, 135, 139, 149, 707, 711, 713, 739, 789, 792, 796, 810, 812, 837, 874, 885, 890, 1011, 1014, 1020)),[5] the majority of the mental health record reveals largely normal findings and supports the ALJ's conclusion that Plaintiff had no more than minimal limitations in her ability to perform basic work functions.   For example, while at times Plaintiff was noted to have a depressed or sad mood, she was often was found to have a content or euthymic mood and normal or appropriate affect.   (*See, e.g.,* R. at 733, 735, 808, 839, 872, 881-82, 1005, 1007-08, 1017, 391, 395, 403, 412, 417, 422, 538, 545, 549, 552, 561, 744, 749, 752, 760-61, 765, 773, 830, 834, 853, 898, 907, 911.)   The medical records also consistently show that Plaintiff was oriented to person, place, time, and situation, and had normal speech; logical thought process; normal perception, cognition, insight, and judgment; average intelligence; and no hallucinations or delusions.   (R. at 711, 733, 735, 796, 808, 839, 872, 812-13, 881-82, 890, 1005, 1007-08, 1017, 1020; *see also* R. at 391, 395, 403, 412, 417, 422, 538, 545, 549, 552, 561, 744, 749, 752, 760-61, 765, 773, 830, 834, 853, 898, 907, 911.))

---

5 The undersigned also points out that Plaintiff relies on several records that were submitted to the Appeals Council that were not made part of the record.   (*See* Pl.'s Statement of Errors at 7, ECF No. 9 (citing R. at 124, 126, 135, 139, 149); *see also* Appeals Council Denial, R. at 2 (finding the additional evidence did not "show a reasonable probability that it would change the outcome of the decision" and stating that it did not exhibit the evidence).   The Court cannot consider this evidence for purposes of substantial evidence review of the ALJ's decision.   *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (explaining that the "court has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review") (citing *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir.1996)); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838–39 (6th Cir. 2016) (finding that the "district court simply was not in the position to consider new evidence in 'deciding whether to uphold, modify, or reverse the ALJ's decision'").   Further, Plaintiff has not argued that the Court should remand this case to the ALJ for consideration of new and material evidence. Thus, the Court will not consider the additional evidence submitted to the Appeals Council in determining whether the ALJ's decision was supported by substantial evidence.

Accordingly, although Plaintiff points to some evidence that could support an alternative finding, substantial evidence supports the ALJ's finding that Plaintiff's mental impairment is non-severe, and the undersigned will not re-weigh the evidence. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *DeLong*, 748 F.3d at 726; *White*, 572 F.3d at 284.

### 3. The ALJ's Consideration of the GAF Scores Assessed by Southeast Healthcare Services

Finally, Plaintiff's contention that the ALJ should have assigned greater weight to the GAF scores of 55 assessed by Southeast Healthcare Services is not persuasive. The ALJ explained her decision to assign little weight to the GAF scores as follows:

> Furthermore, the multiple GAF scores of 55 noted by Southeast Healthcare Services are afforded little weight. (Exhibit 9F/15, 29, 14F/17, 28, 21F/12, 20, 27F/9, 18). The undersigned notes that specific aspects of sociability and concentration or persistence can typically be objectively tested, observed, and verified within the context of a clinical examination. However, a GAF score, as its name indicates, is a global assessment, and thus paints a rather broad picture, that is somewhat less definitive with respect to particular aspects of workplace functioning. Moreover, these scores are highly subjective ratings that can easily vary from one practitioner to the next and generally represent only a "snapshot" of the presentation of information available from a subject on the day of assessment. As such, the GAF scores in this case are afforded little weight, as they are outweighed by the objective findings with regard to the claimant's mental functioning, analyzed in detail above.

(R. at 25-26.)

The undersigned finds no error in the ALJ's reasoning. As the ALJ explained, a GAF score represents a "snapshot" of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 F. App'x 191, 194 n. 2 (6th Cir. 2003); *see also* DSM-IV-TR at 32–34. "As such, a GAF assessment is isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis." *Arnold v. Astrue*, No. 10-cv-13, 2010 WL 5812957, at *8

(S.D. Ohio Oct. 7, 2010).   For this reason, the ALJ's decision not to credit Southeast Healthcare

Services GAF scores in considering the severity of Plaintiff's mental impairments is appropriate

given the objective findings in the record.   Further, "the Commissioner has declined to endorse

the GAF score for use in the Social Security and SSI disability programs, and has indicated that

GAF scores have no direct correlation to the severity requirements of the mental disorders

listings."   *Kennedy v. Astrue,* 247 F. App'x 761, 766 (6th Cir. 2007) (internal quotation marks

and citations omitted).   Accordingly, the ALJ reasonably discounted the GAF scores assessed by

Southeast Health Services.

### 4.   Conclusion

Based on the foregoing, the undersigned finds that the ALJ properly considered

Plaintiff's mental impairment at step two of the sequential analysis and that substantial evidence

supports her conclusion that Plaintiff's unspecified depressive disorder is non-severe.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's contention of error be

**OVERRULED**.

## B.   The ALJ's RFC Assessment

Plaintiff further asserts that the ALJ's error at step two ultimately led to an incorrect

residual functional capacity and that the ALJ failed to consider her mental impairments in

assessing her RFC.   (Pl.'s Statement of Errors at 11, ECF No. 9.)

Where, as here, the ALJ determines that a claimant had a severe impairment at step two

of the analysis, "the question of whether the ALJ characterized any other alleged impairment as

severe or not severe is of little consequence."   *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801,

803, (6th Cir. 2003).   Instead, the pertinent inquiry is whether the ALJ considered the "limiting

effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

However, the ALJ's determination that a claimant has some mild impairment does not *require* inclusion of mental limitations into the RFC. *See, e.g.*, *Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13-14 (S.D. Ohio Aug. 24, 2015) (no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *White v. Comm'r of Soc. Sec.*, No. 2:17-CV-1063, 2018 WL 5303060, at *5 (S.D. Ohio Oct. 25, 2018) (same); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations). Severe or non-severe, an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work. *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) ("The RFC describes the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities. A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." (internal quotation marks and citations omitted)).

Here, the ALJ properly considered Plaintiff's non-severe mental impairment in assessing

her RFC and concluded that limitations attributable to her mental impairments were not warranted.   (*See* R. at 26 (stating "the following residual functional capacity assessment reflects the degree of limitation [the ALJ] has found in the 'paragraph B' mental function analysis").)   The ALJ also specifically stated that Plaintiff has no severe mental impairments and that "there are no functional limitations in the residual functional capacity."   (R. at 26.)   In concluding that Plaintiff's depressive disorder did not cause more than minimal limitations on her ability to perform basic work functions, the ALJ thoroughly considered Plaintiff's medical records, treatment history/lack of treatment history, the opinion evidence, and a function-by-function discussion of the "paragraph B" criteria.   (*See* R. at 23-26.)

Nonetheless, Plaintiff erroneously contends that the ALJ failed to consider her mental impairment in assessing her RFC because her depressive disorder was not discussed after step two of the sequential analysis.   The Sixth Circuit has made clear that an ALJ's decision must be read as a whole.   *C.f. Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (explaining that an ALJ's decision must be read as a whole).   Although the ALJ did not discuss Plaintiff's unspecified depressive disorder in the section of her decision articulating Plaintiff's RFC, her discussion at step two demonstrates that she reasonably considered whether Plaintiff's depressive disorder caused functional limitations and concluded that it did not.

Furthermore, as explained above, Plaintiff fails to point to record evidence that detracts from the ALJ's decision to omit specific mental limitations from her RFC.   Based on the foregoing, the undersigned concludes that the ALJ properly considered Plaintiff's mental impairments in assessing her RFC and that substantial evidence supports the ALJ's decision to omit non-exertional limitations attributable to her mental impairments.   Accordingly, the

undersigned **RECOMMENDS** that this contention of error be **OVERRULED**.

## VI.    DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.   Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).    A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.   Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.   28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

_/s/ Chelsey M. Vascura_
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE